# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JOHN W. WILLIAMS,                    )
                                     )
          Plaintiff,                 )
                                     )
     vs.                             )          Case No. 4:07CV1317 ERW
                                     )
MICHAEL J. ASTRUE,                   )
Commissioner of Social Security,     )
                                     )
          Defendant.                 )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying the application of John W. Williams for a Period of Disability and Disability Insurance

Benefits under Title II of the Social Security Act. The cause was referred to the undersigned

United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636

(b). Plaintiff has filed a Brief in Support of Plaintiff's Complaint. (Document Number 15).

Defendant has filed a Brief in Support of the Answer. (Doc. No. 17).

### Procedural History

On April 22, 2005, plaintiff filed his application for benefits, claiming that he became

unable to work due to his disabling condition on May 1, 1999.[1] (Tr. 117-119). This claim was

---

[1]Plaintiff previously applied for Disability Insurance Benefits on September 17, 2001. (Tr. 30-32). Plaintiff's claim was denied initially on December 6, 2001, and was not appealed further. (Tr. 23, 25-28, 33). The ALJ noted that plaintiff's current claim alleges the same basis for disability as the prior claim. (Tr. 18). The ALJ found that there was no basis for reopening the prior decision and thus applied res judicata to the prior application. (Id.). This is the appropriate

denied initially, and following an administrative hearing, plaintiff's claim was denied in a written opinion by an Administrative Law Judge (ALJ), dated September 14, 2006. (Tr. 97-101, 14-22). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on June 14, 2007. (Tr. 10-13, 2-4). Thus, the decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A.    ALJ Hearing

Plaintiff's administrative hearing was held on July 12, 2006. (Tr. 323). Plaintiff was present and was represented by counsel. (Id.). The ALJ admitted all of the exhibits into the record. (Id.).

Plaintiff's attorney then examined plaintiff, who testified that he was 37 years of age. (Id.). Plaintiff stated that he was five feet, eleven inches tall and weighed 201 pounds. (Id.). Plaintiff testified that he was right-hand dominant. (Tr. 325). Plaintiff stated that he was married and had four children at home. (Id.). Plaintiff testified that his wife performs data-entry work for St. Louis County. (Id.). Plaintiff stated that his wife's income is the only source of income for the family. (Id.).

Plaintiff testified that he finished high school and received vocational training as an auto mechanic. (Id.). Plaintiff stated that he used this vocational training when he worked at Famous

---

result where the ALJ has ruled against reopening the prior claim, and has not reconsidered the merits of the earlier claim. Robbins v. Secretary of Health and Human Services, 895 F.2d 1223, 1224 (8th Cir. 1990). Accordingly, res judicata applies to the period before December 6, 2001, and the present action deals with plaintiff's condition after that date until the expiration of his insured status on June 30, 2002.

Barr Goodyear working on cars and changing tires. (Tr. 326). Plaintiff testified that he has also worked as a shuttle driver, cleaner, trash hauler, and truck driver. (Id.). Plaintiff stated that the last time he worked, he worked for himself rehabilitating houses. (Id.). Plaintiff testified that he stopped performing this work in 1999 due to back problems caused by bulging discs. (Tr. 327).

Plaintiff stated that he first began experiencing back problems in 1993, after he sustained a work-related injury. (Id.). Plaintiff testified that he collapsed as he was lifting a heavy truck tire. (Id.). Plaintiff stated that he received a workers' compensation settlement from this injury. (Id.). Plaintiff testified that he returned to work until 1999. (Id.). Plaintiff stated that he has not worked since 1999. (Id.).

Plaintiff testified that he has consulted surgeons Robert Bernardi and Daniel Scodary about his back. (Tr. 328). Plaintiff stated that the surgeons told him that he has degenerative disc disease[2] and that he would have this condition for the rest of his life. (Id.). Plaintiff testified that the surgeons told him that he could either undergo surgery, which might provide some relief, or he could receive pain management. (Id.). Plaintiff stated that he decided to receive pain management. (Id.). Plaintiff testified that he has been seeing Dr. William Knapp and nurse practitioner Cindy Perkins since October of 2001. (Id.). Plaintiff stated that he consulted with Dr. Knapp and Ms. Perkins due to his back problems. (Id.).

Plaintiff testified that his condition is about the same in severity now as it was when he left work in 1999. (Id.). Plaintiff stated that he experiences pain in his lower back, which goes down both legs to his feet and into his groin area. (Tr. 329). Plaintiff testified that the pain affects his

---

[2]A general term for both acute and chronic processes destroying the normal structure and function of the intervertebral discs. See J. Stanley McQuade, Medical Information Systems for Lawyers, § 6:201 (1993).

ability to walk. (Id.). Plaintiff stated that he is unable to stand erect and place his weight evenly on both legs due to the increased pain he experiences in this position. (Id.). Plaintiff testified that he has to bend over slightly when he stands. (Id.). Plaintiff stated that he bends forward when sitting to relieve some of the pressure. (Id.). Plaintiff testified that he experiences increased pain when he sits back in chairs. (Id.). Plaintiff stated that he experiences constant back pain. (Id.). Plaintiff testified that he takes pain medication and lies down with his legs propped to relieve some of the pain. (Tr. 330). Plaintiff stated that he spends four to five hours a day lying down to relieve his back pain. (Id.).

Plaintiff testified that his surgeons offered him a procedure but he did not elect to undergo surgery because they could not guarantee that it would relieve his pain. (Id.). Plaintiff stated that the surgeons also told him that he would likely lose 50 percent of his bending ability if he underwent the surgery. (Id.). Plaintiff testified that the procedure involved fusing two of his discs. (Id.).

Plaintiff stated that Dr. Knapp and Ms. Perkins prescribed medication, sent him to pain management, and prescribed exercises. (Tr. 331). Plaintiff testified that they also administer steroid shots three times a year. (Id.). Plaintiff stated that he started receiving the steroid shots in 1993. (Id.). Plaintiff testified that the steroid shots do not provide any relief. (Id.). Plaintiff stated that none of the measures his doctors have tried have provided any relief. (Id.).

Plaintiff testified that he can drive, although he experiences pain. (Id.). Plaintiff stated that he places a folded towel behind his back when he drives, which occasionally provides some relief. (Id.). Plaintiff testified that he is only able to drive to the store and back. (Tr. 332). Plaintiff stated that he has not left St. Louis in five to six years. (Id.).

Plaintiff testified that he does not sleep well because he is restless due to his back pain. (Id.). Plaintiff stated that he usually only sleeps two to three hours a night. (Id.). Plaintiff testified that he does not feel rested when he gets up in the morning. (Id.).

Plaintiff stated that he is not able to play ball or fish with his kids. (Id.). Plaintiff testified that his neighbor, Fred, helps him with his son. (Id.). Plaintiff stated that his daughters cut the grass. (Id.).

Plaintiff testified that on a typical day, he wakes up, gets the kids ready for school, reads, and lies down. (Tr. 333). Plaintiff stated that this has been his routine since he stopped working. (Id.).

Plaintiff rated his pain as a seven to eight on a scale of one to ten. (Id.). Plaintiff testified that his pain is worse than a seven or eight in the mornings when he wakes up. (Id.). Plaintiff stated that his pain is severe for the first few hours after he wakes up, until he starts moving around. (Id.). Plaintiff testified that physical activity increases his pain. (Id.). Plaintiff stated that his pain increases when he carries bags of groceries. (Id.). Plaintiff testified that he can lift a gallon of milk with pain. (Tr. 334).

Plaintiff stated that he planned to continue with physical therapy until he is unable to tolerate the pain, at which time he would try surgery. (Id.). Plaintiff testified that Cindy Perkins at Dr. Knapp's office ordered the physical therapy. (Id.).

The ALJ then examined plaintiff, who testified that he was attending physical therapy at the time of the hearing. (Id.). Plaintiff stated that he started physical therapy in 2005 and that he will continue it indefinitely. (Tr. 335).

Plaintiff testified that he cooks occasionally. (Id.). Plaintiff stated that he does not wash

dishes, sweep, vacuum, wash clothes, or shop for groceries.  (Id.).  Plaintiff testified that when he

drives a vehicle, he goes to the grocery store.  (Id.).

Plaintiff stated that he can bend to his knees but cannot fully bend.  (Id.).

Plaintiff testified that he participates in church activities.  (Tr. 336).  Plaintiff stated that he

attends church and takes his children to church.  (Id.).  Plaintiff testified that he does not work on

the computer.  (Id.).  Plaintiff stated that he does not participate in any hobbies other than reading

the Bible.  (Id.).

Plaintiff testified that he worked at a position driving a sweeper for about two months.

(Id.).  Plaintiff stated that he stopped working at this position due to his back pain.  (Id.).  Plaintiff

testified that he worked as a bus driver for about three months and that he quit this job due to his

back problems.  (Id.).  Plaintiff stated that he also worked as a truck driver for a few months and

that he quit this position due to his back problems.  (Id.).

Plaintiff testified that he filed a workers' compensation claim, which settled.  (Id.).

Plaintiff stated that he received about $8,000.00 from the settlement.  (Tr. 337).

Plaintiff's attorney indicated that the record was complete.  (Id.).  The ALJ then closed the

hearing and closed the record.  (Id.).

**B.** **Relevant Medical Records[3]**

Plaintiff presented to Theodore Schuerman, M.D. on September 6, 2001, with complaints

of chronic and acute back and arm pain.  (Tr. 317).  Plaintiff reported that he had been

---

[3]Although res judicata applies to the period before December 6, 2001, medical evidence
prior to this date may be considered insofar as it serves as a background for new and additional
evidence of deteriorating mental or physical conditions occurring after the prior proceeding.  See
Robbins, 895 F.2d at 1224.

experiencing back pain since a work-related accident in 1993. (Id.). Plaintiff indicated that he was currently working in real estate, and that he had been for a year-and-a-half. (Id.). Plaintiff reported experiencing discomfort for two to three weeks at a time that occasionally goes away for two to three weeks. (Id.). Plaintiff's straight leg raising was negative bilaterally and neurological examination of the upper and lower extremities was negative. (Id.). Dr. Schuerman's assessment was acute and chronic low back pain and paresthesias in the arms that have resolved. (Tr. 318).

Plaintiff saw William Knapp, D.O. on October 25, 2001, for a follow-up from the hospital regarding his back problems. (Tr. 267). Plaintiff complained of intermittent back pain that radiates down to both legs. (Id.). It was noted that plaintiff had gone to Christian Hospital Northwest two weeks prior for x-rays, which revealed abnormalities of the lumbar spine.[4] (Id.). Upon physical examination, plaintiff had positive straight leg raising and positive left foot drop with no left knee jerk. (Tr. 267A). Dr. Knapp diagnosed plaintiff with bulging lumbar discs, left foot drop, and left hip pain. (Id.).

Plaintiff saw Dr. Knapp on December 3, 2001, for a follow-up regarding his back problem. (Tr. 264). Plaintiff reported that he was sleeping about three to four times a week with less pain, although he was still taking three pain pills a day. (Id.). Plaintiff indicated that his back pain was chronic but fluctuates. (Id.). Dr. Knapp diagnosed plaintiff with lumbar pain with

---

[4]The back is comprised of the cervical, thoracic and lumbar regions. In common terms, the cervical region of the spinal column is the neck; the thoracic region is the main part of the back; and the lumbar region is the lower back. There are seven cervical vertebrae, twelve thoracic vertebrae, and five lumbar vertebrae. The sacrum lies directly below the fifth lumbar vertebra. The coccyx, or tail bone, lies below the sacrum. See Medical Information Systems for Lawyers, § 6:27.

radiculopathy and left foot drop.[5]  (Tr. 265).

Plaintiff underwent an MRI of the lumbosacral spine on December 10, 2001, which revealed small midline disc extrusion at L4-L5, bulging of the annulus fibrosis at L3-L4, and a small midline disc bulge at L5-S1.  (Tr. 309).

Plaintiff saw Daniel Scodary, M.D. on January 15, 2002, for a consultation regarding his back pain.  (Tr. 260).  Plaintiff reported experiencing severe lower back pain since 1993.  (Id.).  Plaintiff complained of associated bilateral leg pain, right greater than left, particularly into the buttocks and calf.  (Id.).  Plaintiff also reported subjective numbness.  (Id.).  Plaintiff's medications were listed as Vioxx,[6] Vicodin,[7] and Zanaflex.[8]  (Id.).  Plaintiff's neurological examination was normal, with negative straight leg raising.  (Id.).  Dr. Scodary indicated that plaintiff's MRI of the lumbar spine revealed a very small disc extrusion at L4-5 in the midline, a bulging annulus at L3-4 and a small midline disc bulge at L5-S1, none of which appeared to compress his nerve root significantly.  (Id.).  Dr. Scodary recommended a discogram to better evaluate plaintiff's degenerative disc disease.  (Id.).

Plaintiff underwent a discogram on February 5, 2002.  (Tr. 279).  Plaintiff experienced pain at all three levels.  (Id.).  Radiculopathy was demonstrated at the L3-4 level.  (Tr. 280).  Only

_____

[5]Partial or total inability to dorsiflex the foot, as a consequence of which the toes drag on the ground during walking.  See Stedman's Medical Dictionary, 756 (28th Ed. 2006).

[6]Vioxx is indicated for the relief of osteoarthritis and acute pain.  See Physician's Desk Reference (PDR), 2122 (57th Ed. 2003).

[7]Vicodin is indicated for the relief of moderate to moderately severe pain.  See PDR at 509.

[8]Zanaflex is indicated for the management of spasticity.  See PDR at 1275.

the L5-S1 level revealed central herniation with both radial and posterior longitudinal tear and probable herniated segment centrally; the segment was small and there was no evidence of encroachment on the nerve root. (Id.).

Plaintiff saw Dr. Knapp on October 23, 2003, at which time it was noted that plaintiff had not been in because he had been doing okay. (Tr. 259). Plaintiff reported that the Vioxx helped a lot and that he only used his other pain medication less than once a week. (Id.). Dr. Knapp diagnosed plaintiff with a bulging lumbar disc, chronic back pain with radiculopathy, and hyperlipidemia.[9] (Tr. 258).

Plaintiff saw Dr. Knapp on February 28, 2005, at which time plaintiff reported that his back pain was worse than ever. (Tr. 255). Plaintiff stated that his pain started two weeks prior while he was installing a door lock set with a drill. (Id.). Dr. Knapp diagnosed plaintiff with multilevel lumbar disc bulging and herniation and right foot drop. (Tr. 254). He prescribed Lortab[10] and Zanaflex and ordered an MRI of the lumbar spine. (Id.).

Plaintiff underwent an MRI of the lumbar spine on March 3, 2005, which revealed desiccated disc at L5-S1 with mild diffuse annular and focal posterior. (Tr. 252).

In a March 7, 2005 letter to Dr. Knapp, Dr. Scodary stated that plaintiff presented on this date with complaints of lower back and right groin pain and that he had last seen him in January of 2002. (Tr. 251). Dr. Scodary stated that plaintiff had undergone a discogram in 2002 but he did not follow up. (Id.). He indicated that plaintiff's new MRI revealed diffuse degenerative disc

---

[9]Elevated levels of lipids in the blood plasma. See Stedman's at 922.

[10]Lortab is indicated for the relief of moderate to moderately severe pain. See PDR at 3227.

disease particularly at L3-4, L4-5, and L5-S1, all of which were positive in 2002. (Id.). Dr. Scodary stated that he recommended a follow-up discogram before discussing possible stabilization. (Id.).

Plaintiff saw Dr. Knapp on March 10, 2005, as a follow-up from Dr. Scodary. (Tr. 250). Plaintiff reported that Dr. Scodary was very abrupt and argumentative and basically told him that he did not want to see him again unless he agreed to surgery. (Id.). Dr. Knapp diagnosed plaintiff with multilevel degenerative disc disease, lumbar bulging discs, and herniated discs. (Tr. 249). He recommended that plaintiff continue his medications and get a second opinion from Dr. Robert J. Bernardi. (Id.).

Plaintiff saw Dr. Bernardi on April 12, 2005. (Tr. 270). Plaintiff reported that he had been experiencing back problems since 1993 after a work-related injury, although the pain had been much worse since 2001 or 2002. (Id.). Plaintiff complained of pain across the lower lumbar region that was much worse over the right than the left side, bilateral buttock pain that radiated posteriorly down the back of both legs to the knees. (Id.). Plaintiff ambulated with a cane and walked markedly flexed forward at the waist. (Id.). Examination of the back revealed no spasms or trigger points, no pain over the greater trochanters, slight tenderness to palpation in the right sciatic notch but not the leg, negative straight leg raising, and limited motion of both hips with no tenderness. (Id.). Plaintiff had full strength in both lower extremities, normal motor tone, and no atrophy. (Tr. 271). Dr. Bernardi indicated that he had reviewed plaintiff's MRI of the lumbar spine taken in March 2005, which revealed degenerative disc disease at L3-L4, L4-L5, and L5-S1, manifested by loss of disc height as well as disc hydration, yet no evidence of significant central lateral recess or foraminal stenosis. (Id.). Dr. Bernardi noted that plaintiff's imaging

studies did not reveal any significant nerve root compression. (Id.). Dr. Bernardi stated that plaintiff's symptoms were due to underlying degenerative disc disease in the lumbar spine. (Id.). He indicated that he discussed the advantages and disadvantages of fusion and told plaintiff that if he felt as though he were incapacitated by his symptoms then fusion would be a reasonable alternative. (Id.).

Plaintiff presented to Washington University Pain Management Center on December 1, 2005, with a chief complaint of low back pain. (Tr. 244). Plaintiff reported lower back pain radiating into the buttocks and right hip, and sometimes going down to his lower extremities and feet. (Id.). Plaintiff rated his pain as a six out of ten at best and a ten out of ten at worst. (Id.). Nhat Nguyen, M.D. noted that plaintiff used a cane for walking and that he was unable to walk on his toes and heels because of weakness and pain. (Tr. 245). Dr. Nguyen noted that plaintiff had been given the option of surgery in 2002, but he declined and instead requested conservative management. (Id.). Plaintiff's motor strength examination in the upper extremities was within normal limits bilaterally and was normal on the left lower extremity with hip flexion, extension, knee flexion and extension, ankle flexion and extension. (Id.). On the right lower extremity, plaintiff's motor strength was four out of five at the right hip extension/flexion, right knee extension/flexion, and right ankle plantar flexion; and three out of five at the right ankle dorsiflexion. (Id.). Deep tendon reflexes were decreased on the right lower extremity with 1+ in the right patella tendon and 1+ at the right ankle. (Id.). Sensory examination to pinprick was decreased at the right L2, L3 distribution. (Id.). Straight leg raising was positive at five to ten degrees on the right side and fifteen to twenty degrees on the left side. (Id.). Marked paraspinal tenderness was noted in the lumbar area and the sacral area to deep palpation. (Id.). Dr. Nguyen

diagnosed plaintiff with lumbar disc protrusion at L3-4, L4-5, and L5-S1 and bilateral sciatica pain. (Id.). Dr. Nguyen prescribed Neurontin[11] and epidural steroid injections. (Id.).

Plaintiff presented to Washington University Pain Management Center on December 12, 2005, for a follow-up. (Tr. 222). It was noted that plaintiff had an unsteady gait and decreased range of motion secondary to pain but that plaintiff was able to walk on his toes and heels. (Id.). A lumbar epidural steroid injection was administered at L4-5. (Tr. 227). Plaintiff underwent lumbar epidural steroid injections at L4-5 on January 12, 2006, and on February 8, 2006. (Tr. 196, 195).

Plaintiff presented to the Pain Management Center on April 11, 2006, at which time plaintiff rated his pain as a six out of ten on average, which was described as pain that partially interferes with activities of daily living. (Tr. 182). Plaintiff's medications were listed as Percocet,[12] Neurontin and Zanaflex. (Id.). It was noted that plaintiff had last seen Dr. Knapp in December 2006. (Tr. 185).

Plaintiff saw Dr. Knapp on May 11, 2006, at which time he complained of back pain. (Tr. 191). Plaintiff reported that pain management was not helping. (Id.). Muscle spasm, vertebral tenderness, and sensory loss of the right leg were noted upon physical examination. (Tr. 192). Dr. Knapp diagnosed plaintiff with bulging and herniated lumbar discs with radiculopathy and left foot drop. (Id.). He continued plaintiff on his medications and gave him samples of Skelaxin[13]

---

[11]Neurontin is indicated for the management of postherpetic neuralgia. See PDR at 2565.

[12]Percocet is indicated for the relief of moderate to moderately severe pain. See PDR at 1304.

[13]Skelaxin is indicated for the relief of acute, painful musculoskeletal conditions. See PDR at 1274.

and Soma.[14]  (Id.).  Dr. Knapp recommended that plaintiff see Dr. Bernardi for surgery.  (Id.).

In a letter dated May 12, 2006, Cindy Perkins, FNP, in collaborative practice with Dr. Knapp, noted that plaintiff had first presented on October 25, 2001, with complaints of severe low back pain with radiculopathy requiring narcotics and muscle relaxants.  (Tr. 194).  Ms. Perkins stated that weakness in the left leg and left foot drop were noted at that time.  (Id.).  Ms. Perkins noted that an MRI of the lumbar spine revealed diffuse degenerative disc disease at L3-4, L4-5, and L5-S1.  (Id.).  She stated that a discogram revealed radiculopathy at L3-4 with L5-S1 having central herniation and posterior radial and longitude tears.  (Id.).  Ms. Perkins expressed the opinion that plaintiff was "disabled enough to not work from the point of his first visit on 10/01." (Id.).

## **The ALJ's Determination**

The ALJ made the following findings:

1.      The claimant met the disability insured status requirements of the Social Security Act as of the alleged onset date on May 1, 1999.

2.      Res judicata is applicable with regard to the prior denial dated December 6, 2001 on a prior application filed on September 15, 2001, with respect to the period from January 2, 2000 through December 6, 2001.  The claimant was not disabled for the period from January 2, 2000 through December 6, 2001.

3.      The period from May 1999 through January 2000 is less than twelve months in duration.  Any disability existing at that time failed to meet the durational requirements.  Therefore, the claimant was not disabled from May 1, 1999 through January 2000.  (20 CFR 1520(a)(4)(ii)).

4.      During the period from December 7, 2001 through June 30, 2002, the date last insured, the claimant had lumbar degenerative disc disease.

---

[14]Soma is indicated for the relief of acute, painful musculoskeletal conditions.  See PDR at 3254.

5. The claimant's lumbar degenerative disc disease was not severe during the period extending through his date last insured of June 30, 2002. The claimant was not disabled during the relevant period and entirely through his date last insured of June 30, 2002. (20 CFR 404.320). The claimant is not entitled to a Period of Disability and Disability Insurance Benefits.

(Tr. 22).

The ALJ's final decision reads as follows:

It is the decision of the Administrative Law Judge that, based upon the application filed on April 21, 2005, the claimant is not entitled to a Period of Disability or Disability Insurance Benefits, under Sections 216(i) and 223, of the Social Security Act.

(Tr. 22).

## Discussion

A.    **Standard of Review**

Judicial review of a decision to deny Social Security benefits is limited and deferential to the agency. See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The decision of the SSA will be affirmed if substantial evidence in the record as a whole supports it. See Roberts v. Apfel, 222 F.3d 466, 468 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion. See Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998). If, after review, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the denial of benefits must be upheld. See Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). The reviewing court, however, must consider both evidence that supports and evidence that detracts from the Commissioner's decision. See Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996). "[T]he court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contrary." Burress v. Apfel, 141

F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."

Id.

**B.    The Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a).  The claimant has the burden of proving that s/he has a disabling impairment.  See Ingram v. Chater, 107 F.3d 598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); Fines v. Apfel, 149 F.3d 893, 894-895 (8th Cir. 1998).  First, it is determined whether the claimant is currently engaged in "substantial gainful employment."  If the claimant is, disability benefits must be denied.

See 20 C.F.R. §§ 404.1520, 416.920 (b).  Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments.

See 20 C.F.R §§ 404.1520 (c), 416.920 (c).  To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."  Id.  Age, education and work experience of a claimant are not considered in making the "severity" determination.  See id.

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial

gainful employment.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired.  See 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work.  See 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.  See id.  If the claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f).  The claimant is entitled to disability benefits only if s/he is not able to perform any other work.  See id.  Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work.  See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

**C.     Plaintiff's Claim**

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence in determining that plaintiff did not suffer from a medically severe impairment prior to the expiration of his insured status on June 30, 2002.  Defendant contends that the ALJ properly found that plaintiff's degenerative disc disease was not severe during the relevant period.

In order to be entitled to a Period of Disability and Disability Insurance Benefits, a

claimant must be insured for disability. See 20 C.F.R. §§ 404.315, 404.320. Thus, in order to

receive disability insurance benefits, a claimant must show onset of disability before the expiration

of insured status. See Pyland v. Apfel, 149 F.3d 873, 876 (8th Cir. 1998). In this case, plaintiff

must show an onset of disability prior to June 30, 2002, plaintiff's last date of insured status. As

previously discussed, res judicata applies to the period prior to December 6, 2001. As such,

plaintiff must show that his condition was disabling during the period of December 6, 2001,

through June 30, 2002.

    The ALJ found at step two of the sequential evaluation that plaintiff's degenerative disc

disease was not severe at the time his insured status expired. (Tr. 20). Step two of the sequential

evaluation process requires a determination of whether the claimant suffers from a medically

severe impairment or combination of impairments. See 20 C.F.R §§ 404.1520 (c), 416.920 (c).

To qualify as severe, the impairment must significantly limit the claimant's mental or physical

ability to do "basic work activities." Id. While the burden is not great, the claimant bears the

burden at step two to demonstrate a severe impairment that significantly limits the ability to

perform basic work activities. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000);

Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001). Severity is not a "toothless standard,"

and the Eighth Circuit has upheld on numerous occasions the Commissioner's finding that a

claimant failed to make this showing. Kirby v. Astrue, 500 F.3d 705, 708 (8th Cir. 2007). See,

e.g. Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003); Simmons v. Massanari, 264 F.3d 751,

755 (8th Cir. 2001); Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997); Nguyen v.

Chater, 75 F.3d 429, 431 (8th Cir. 1996). The sequential evaluation process may be terminated at

step two when the claimant's impairment or combination thereof would have no more than a

minimal effect on the claimant's ability to work.  See Simmons, 264 F.3d at 755.

In the instant case, plaintiff contends that the medical evidence in the record dated prior to June 30, 2002 demonstrates that his degenerative disc disease was severe.  Despite plaintiff's claims, the ALJ found that the evidence of record, including the objective medical evidence, is not supportive of the presence of a severe impairment prior to June 30, 2002.  On December 3, 2001, just prior to the relevant period, Dr. Knapp diagnosed plaintiff with lumbar pain with radiculopathy and left foot drop.  (Tr. 265).  Plaintiff underwent an MRI of the lumbosacral spine on December 10, 2001, which revealed a "small" midline disc extrusion at L4-L5, bulging of the annulus fibrosis at L3-L4, and a "small" midline disc bulge at L5-S1.  (Tr. 309).  No evidence of spinal stenosis was found.  (Id.).  On January 15, 2002, plaintiff saw Dr. Scodary, at which time plaintiff's neurological examination was normal, with negative straight leg raising.  (Tr. 260).  Plaintiff complained of severe lower back pain since 1993.  (Id.).  A discogram plaintiff underwent on February 5, 2002 revealed radiculopathy at the L3-4 level, and a herniated disc at L5-S1, but no evidence of encroachment on the nerve root and no evidence of spinal stenosis.  (Tr. 279-80).  Dr. Nguyen noted that plaintiff had been given the option of surgery at this time, but he declined and instead requested conservative management.  (Tr. 245).  The ALJ found that without evidence of significant stenosis and encroachment, allegations of severe pain, weakness and decreased sensation remain unsupported.  (Tr. 20).  The ALJ then concluded that plaintiff's degenerative disc disease was not severe at the time his insured status expired.  This finding is supported by substantial evidence.

In determining that plaintiff's back impairment was not severe, the ALJ also performed a proper credibility analysis.  "While the claimant has the burden of proving that the disability

results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (quoting settlement agreement between Department of Justice and class action plaintiffs who alleged that the Secretary of Health and Human Services unlawfully required objective medical evidence to fully corroborate subjective complaints). Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors." Kelley, 133 F.3d at 588. Polaski requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of the medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322. See also Burress, 141 F.3d at 880; 20 C.F.R. § 416.929.

The ALJ found that the medical evidence does not support plaintiff's subjective complaints. Although the ALJ may not discount subjective complaints solely because they are not fully supported by the objective medical evidence, the lack of supporting objective medical evidence may be considered as a factor in evaluating the claimant's credibility. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir. 2003).

Plaintiff relies on the retrospective opinion of nurse practitioner Cindy Perkins provided in May 2006 as support for his contention that his back impairment was severe during the relevant period. Ms. Perkins stated that plaintiff first presented on October 25, 2001, with complaints of severe low back pain with radiculopathy. (Tr. 194). Ms. Perkins cited the MRI findings, which

revealed degenerative disc disease at L3-4, L4-5, and L5-S1.  (Id.).  Ms. Perkins than concluded that plaintiff was "disabled enough to not work from the point of his first visit on 10/01."  (Id.).

A doctor's retrospective diagnosis must be based on a medically accepted clinical diagnostic technique and must be considered in light of the record as a whole in order to ascertain whether it shows the existence of a severe impairment "prior to the expiration of [a] claimant's insured status."  Grebenick v. Chater, 121 F.3d 1193, 1199 (8th Cir. 1997) (quoting Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984)).  First, Ms. Perkins is not a doctor and as such is not an acceptable medical source.  Ms. Perkins saw plaintiff in conjunction with Dr. Knapp.  Dr. Knapp, however, never placed any restrictions on plaintiff during the relevant period or thereafter, and never expressed the opinion that plaintiff was disabled.  In addition, Ms. Perkins did not provide any specific functional restrictions, but rather, simply provided the conclusory statement that plaintiff was "disabled enough to not work" during the relevant period.  Thus, Ms. Perkins' statement is not entitled to any weight.

The ALJ next noted that plaintiff did not seek regular or sustained treatment after February 5, 2002.  (Tr. 20).  Specifically, plaintiff did not seek treatment from February 5, 2002, until October 23, 2003.  This is an appropriate consideration, because the fact that a plaintiff fails to seek regular medical treatment disfavors a finding of disability.  See Gwathney, 104 F.3d at 1045.  Further, on plaintiff's October 23, 2003 visit to Dr. Knapp, it was noted that plaintiff had not been in because he had been doing okay.  (Tr. 259).  Plaintiff stated that the Vioxx he was taking provided relief and that he only took Vicodin less than once a week.  (Id.).  The ALJ properly noted that these statements are inconsistent with plaintiff's allegation of a disabling back impairment.

The ALJ also pointed out that none of plaintiff's treating physicians expressed the opinion that plaintiff was unable to work or otherwise imposed any limitations on plaintiff during the relevant period. (Tr. 21). The presence or absence of functional limitations is an appropriate Polaski factor, and "[t]he lack of physical restrictions militates against a finding of total disability." Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (citing Smith v. Shalala, 987 F.2d 1371, 1374 (8th Cir. 1993)).

The ALJ next stated that there is no evidence in the record that plaintiff's medications caused side effects. The presence or absence of side effects from medications is a proper Polaski factor. See Polaski, 739 F.2d at 1322.

The ALJ also pointed out that plaintiff's earnings record indicates earnings through 1995 but not thereafter. Although not controlling on the issue of plaintiff's complaints of disabling pain, a claimant's work history is a proper factor in assessing credibility. See Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996). A poor work history prior to the alleged onset of disability lessens the credibility of a plaintiff's allegations of disabling pain. See Woolf v. Shalala, 3 F.3d 1210, 1214 (8th Cir. 1993).

Moreover, although plaintiff's back impairment resulted from an injury plaintiff sustained in 1993, plaintiff testified that he continued to work until 1999. (Tr. 327). The fact that a claimant worked successfully for a significant period of time with his or her impairments is inconsistent with a claim of disabling pain. See Orrick v. Sullivan, 966 F.2d 368, 370 (8th Cir. 1992). In fact, on September 6, 2001, plaintiff told Dr. Schuerman that he had been working in real estate for the past year-and-a-half. (Tr. 31). This statement significantly detracts from plaintiff's credibility, as it demonstrates that plaintiff was able to work through 2001, after his

alleged onset of disability date, and it is inconsistent with plaintiff's testimony that he stopped working in 1999.

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). However, each and every Polaski factor need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of disabling pain are sufficient and his finding that plaintiff's complaints are not credible is supported by substantial evidence.

In sum, the undersigned finds that sufficient evidence exists in the record to support a finding that plaintiff's degenerative disc disease was not severe during the relevant period. It is true that plaintiff has been diagnosed with degenerative disc disease with bulging discs; however, in light of the lack of evidence of stenosis and encroachment, normal neurological examination, plaintiff's failure to seek medical treatment during a large period of time because he was "doing okay," the lack of any restrictions imposed by his physicians during the relevant period, plaintiff's ability to work for a long period despite his impairment, and plaintiff's inconsistent statements regarding when he stopped working, this impairment does not appear severe enough to preclude his performing basic work activities during the relevant period. While the evidence could support a finding that plaintiff indeed suffered from a severe impairment, reversal is not warranted because substantial evidence in the record also supports the opposite finding that plaintiff did not suffer from a severe impairment. Substantial evidence is found where a reasonable mind would find it adequate to support the decision. See Gallus v. Callahan, 117 F.3d 1061, 1063 (8th Cir. 1997).

So long as there is evidence supporting the decision, a reviewing court should affirm the decision, even if there is evidence supporting an opposite result. See id. Thus, the undersigned recommends that the decision of the Commissioner be affirmed.

Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner denying plaintiff's application for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act be **affirmed**.

The parties are advised that they have eleven (11) days, until August 11, 2008, in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated this ___31st___ day of July, 2008.

_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE